**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

REGINA TOLLIVER,

    Plaintiff,

v.                                                                                   Case No: 8:18-cv-360-T-36MAP

YOUFIT HEALTH CLUBS, LLC,

    Defendant.
_____

**ORDER**

This matter comes before the Court upon Defendant's Motion to Compel Arbitration and Dismiss or Stay for Lack of Subject Matter Jurisdiction and Incorporated Memorandum of Law ("Motion to Compel Arbitration") (Doc. 10), Plaintiff's Response to Defendant's Motion to Compel Arbitration and Dismiss or Stay Case (Doc. 15), and Defendant's Reply to Plaintiff's Response to Defendant's Motion to Compel Arbitration and to Dismiss or Stay Case (Doc. 19). In the Motion to Compel Arbitration, Defendant argues that the parties have agreed to submit all issues, including gateway questions of arbitrability, to arbitration, or, alternatively, that arbitration is required pursuant to the parties' agreements. Doc. 10 at 2. Plaintiff argues that the contracts with Defendant should not be enforced because they are procedurally and substantively unconscionable. The Court, having considered the motion and being fully advised in the premises, will grant Defendant's Motion to Compel Arbitration.

**I.    BACKGROUND**

Plaintiff Regina Tolliver filed this action against Defendant Youfit Health Clubs, LLC ("Youfit") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Consumer Collection Practices Act ("FCCPA"), §§ 559.55-559.785, Fla. Stat.

(2017), based on purported telephone calls and text messages sent by Youfit to Tolliver's wireless telephone number using an automatic telephone dialing system. Doc. 1 ¶¶ 1, 21, 33, 39. The calls and text messages related to payments for Tolliver's gym membership to Youfit, which Tolliver signed up for on May 9, 2017. *Id.* ¶ 32; Doc. 11 ¶ 3; Doc. 15-1 ¶¶ 2, 6. To receive her membership, Tolliver executed Youfit's Membership Agreement, which contains an arbitration provision that states:

> Member agrees that any dispute, controversy, or claim arising out of or relating in any way to the Membership Agreement, including without limitation any dispute concerning the construction, validity, interpretation, enforceability, or breach of this Membership Agreement, shall be exclusively resolved by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules. . . . In the event of a claim arising out of or relating in any way to the Membership Agreement, the complaining party shall notify the other party in writing thereof through a demand for arbitration which shall be made within a reasonable time after the claim has arisen, and in no event shall it be made after two years from when the aggrieved party knew or should have known of the claim. . . .
>
> MEMBER UNDERSTANDS AND AGREES THAT THE MEMBER AND THE CLUB ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT. . . .

Doc. 11-1 at 3. In addition, on May 15, 2017, Tolliver signed up for personal training lessons, and executed Youfit's Personal Training Agreement, which contains an identical arbitration provision.[1] Doc. 11 ¶ 4; Doc. 11-2 at 3; Doc. 15-1 ¶ 12.

On February 12, 2018, Tolliver filed the Complaint and Trial by Jury Demand against Youfit alleging one count for violation of the TCPA, and two counts for violation of the FCCPA. Doc. 1 ¶¶ 57-62. In the Complaint, Tolliver alleges that she cancelled her membership with Youfit approximately one month after opening it. *Id.* ¶ 20. Around August 2017, Tolliver began receiving incessant calls from Youfit at her wireless number, which continued despite her revocation of any

---

[1] The Membership Agreement and Personal Training Agreement will collectively be referred to as the "Agreements."

2

consent to receive calls to that number. *Id.* ¶¶ 21-23. Tolliver received identical voicemail messages from Youfit that stated, in pertinent part, "[t]his is Youfit health club calling to let you know we were unable to process your payment." *Id.* ¶ 32. Tolliver also received at least ten text messages from Youfit at her wireless number. *Id.* ¶ 33. Tolliver ultimately retained counsel to assist in resolving the purported violations of the TCPA and FCCPA. *Id.* ¶ 42.

In response to Tolliver's Complaint, Youfit filed the instant Motion to Compel Arbitration. Doc. 10. Youfit argues that the arbitration provisions in the Membership Agreement and Personal Training Agreement are enforceable agreements to arbitrate that delegate issues of arbitrability to the arbitrator. *Id.* at 4-6. Even in the absence of a delegation clause, Youfit argues that Tolliver's TCPA and FCCPA claims fall within the scope of the arbitration agreements and, therefore, must be submitted to arbitration. *Id.* at 6-7. To support its Motion to Compel Arbitration, Youfit also filed the declaration of the Chief Operating Officer of Youfit, JJ Creegan, who stated that Tolliver became a member of Youfit's Tampa location on May 9, 2017, on which date she executed the Membership Agreement, and that Tolliver executed the Personal Training Agreement, which had a start date of May 15, 2017. Doc. 11-1 ¶¶ 1, 3-4. Attached to the declaration were copies of the Agreements. Doc. 11-1 at 2-7; Doc. 11-2.

Tolliver filed a response to Youfit's Motion to Compel Arbitration, arguing that the arbitration clauses should be invalidated for being unconscionable. Doc. 15 at 3. Tolliver attached her declaration, in which she stated that she had never been to a health club before visiting Youfit, which she explained to the Youfit representative who gave her a tour of the premises. Doc. 15-1 ¶¶ 3-4. The tour lasted about twenty minutes, following which the Youfit representative explained the membership costs and convinced Tolliver to join Youfit the same day. *Id.* ¶¶ 5-6. Tolliver admits in her declaration that she filled out the Membership Agreement, and states that while she

was doing so, the representative explained what costs she was required to pay that day, what the monthly costs were, how the payments would be made, and how to cancel the membership. *Id.* ¶¶ 7-8.  The representative did not, however, provide any explanation as to the arbitration provision, or any other terms of the membership, and Tolliver was unaware of what arbitration was before the Motion to Compel Arbitration was filed. *Id.* ¶¶ 9-11.  Similarly, Tolliver admits to filling out the Personal Training Agreement, but states that this process took no more than five minutes, and that Youfit's representative provided no explanation with respect to the arbitration provision.  *Id.* ¶¶ 12-14.

Based on the facts contained in her declaration, Tolliver argued that the arbitration provisions were procedurally and substantively unconscionable so as to render them unenforceable.  Doc. 15 at 4-8.  Tolliver argues the arbitration provisions are procedurally unconscionable because they are contracts of adhesion, are buried in the Agreements in small print on the second page, contain no option to opt-out, and Tolliver was an unsophisticated party who did not know what arbitration meant and who was not provided with an explanation of the arbitration clause.  Doc. 15 at 4-5.  Tolliver argues that the arbitration provisions are substantively unconscionable because (1) they shorten the limitation period on her TCPA claim from four years to two years; and (2) they defeat the remedial purpose of the TCPA and FCCPA because they allow Youfit to recover attorneys' fees should it prevail, despite the fact that neither statute allows a defendant to recover attorneys' fees.  *Id.* at 6-8.

Youfit obtained leave to file a reply, and argues that because Tolliver failed to challenge the delegation provision specifically, she has waived the right to present argument to the Court regarding unconscionability, and such an argument must be made before the arbitrator.  Doc. 19 at 2-3.  Alternatively, Youfit argues that Tolliver does not establish procedural unconscionability

because she does not state that she was given only a limited time to sign the Agreements, that she requested additional time for review, that she asked for an explanation of the terms, that she could not become a member at other gyms, or what her background and level of sophistication is. *Id.* at 4. Youfit further argues that Tolliver does not establish substantive unconscionability because her TCPA claim would not be time-barred by the shortened limitations period, and any unenforceable terms in the Agreements are severable. *Id.* at 5.

## II.   DISCUSSION

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA reflects federal policy favoring resolution of disputes through arbitration. *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (stating that section 2 of the FAA reflects a liberal federal policy favoring arbitration) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). This policy "requires courts to enforce the bargain of the parties to arbitrate . . . ." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

> Section 4 of the FAA provides that:
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any . . . district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Under this provision, if the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," then it "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

5

"Among other things, the parties may agree to arbitrate the gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted) (emphasis in original). Such a provision is typically referred to as a "delegation provision." *Jones*, 866 F.3d at 1264.

Delegation provisions will be enforced where there is clear and unmistakable language showing that the parties intended for gateway issues of arbitrability to be decided by the arbitrator, and not the Court. *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (citing *Rent-A-Ctr.*, 561 U.S. at 79-80). Language in an arbitration provision that disputes relating to the existence, validity, and enforceability of the agreement shall be resolved by arbitration have previously been held to be clear and unmistakable language delegating such matters to the arbitrator. *Id.* at 1243, 1246; *see also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1145, 1147-48 (11th Cir. 2015) (stating that the arbitration agreement's language that "any issue concerning the validity, enforceability, or scope of . . . the Arbitration agreement" was clear and unmistakable language delegating issues of arbitrability to the arbitrator). Additionally, the Eleventh Circuit has held that clear and unmistakable language delegating questions of arbitrability to the arbitrator exists where the arbitration agreement incorporates by reference specific arbitration rules that allow the arbitrator "to rule on his or her own jurisdiction, including any objections with respect

to the existence, scope or validity of the arbitration agreement." *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).

Additionally, where the parties have agreed to a delegation provision, and the defendant properly raises this in moving to compel arbitration, the district court's review is limited to challenges to that specific provision. *Jones*, 866 F.3d at 1264 (citing *Parnell*, 804 F.3d at 1144); *see also Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016) ("When a delegation provision is properly raised by the defendant and not challenged by the plaintiff, the FAA directs the court to treat the clause as valid and compel arbitration."). In other words, the party seeking to avoid arbitration "must have alleged that the delegation provision specifically— and not just the agreement as a whole—can be 'defeated by fraud, duress, unconscionability, or another generally applicable contract defense.' " *Id.* (quoting *Parnell*, 804 F.3d at 1146). Thus, if a party challenges the agreement as a whole, the Court is required to enforce the arbitration provision, and leave the issue of the agreement's validity to the arbitrator. *Parnell*, 804 F.3d at 1146-47 (citing *Rent-A-Ctr.*, 561 U.S. at 72).

### A.     Delegation

The arbitration provisions in the Agreements contain valid delegation clauses. Not only do the provisions state that claims relating to the validity and enforceability of the Agreements shall be exclusively resolved through binding arbitration, but they also incorporate the Commercial Arbitration Rules of the American Arbitration Association. Doc. 11-1 at 3; Doc. 11-2 at 3. Those rules allow the arbitrator to rule on issues related to his or her own jurisdiction. Doc. 10 at 6; *see also Terminix Int'l*, 432 F.3d at 1332; Am. Arbitration Ass'n, Commercial Arbitration Rules, at 13 (2013), https://www.adr.org/sites/default/f iles/CommercialRules_Web.pdf.

Youfit properly raises the issue of the delegation provision in the Motion to Compel Arbitration. Doc. 10 at 5-6. However, in her response, Tolliver does not address the delegation provision, or expressly challenge it. Doc. 15. Instead, Tollvier challenges the arbitration provisions generally. *Id.* Such a general challenge to the arbitration provisions is not sufficient. *Parnell*, 804 F.3d at 1148-49. Accordingly, the Court must treat the delegation clause as valid and compel arbitration. *Bodine*, 830 F.3d at 1324.

### B.      Unconscionability

Even if Tolliver's argument could be construed as an attack on the delegation provision for being unconscionable, this argument would not succeed. Under Florida law, for a contractual provision to be found unconscionable, there must be both procedural and substantive unconscionability. *Howse v. DirecTV, LLC*, 221 F. Supp. 3d 1339, 1342 (M.D. Fla. 2016) (citing *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999)). "Procedural unconscionability refers to how the agreement to arbitrate was procured, which requires the court to consider factors such as the parties' relative bargaining power and their ability to understand the terms of the arbitration clause." *Id.* Substantive unconscionability, on the other hand, goes to the content of the arbitration clause. *Id.* In evaluating whether an agreement is substantively unconscionable, the Court considers whether the terms are unreasonable or unfair. *Id.* The degree of procedural and substantive unconscionability need not be the same. *Basulto v. Hialea Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014). Instead, a sliding scale is employed, under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Romano ex rel. Romano v. Manor Care, Inc.*, 861 So. 2d 59, 62 (Fla. 4th DCA 2003)).

### 1. Procedural Unconscionability

Tolliver alleges the following bases for finding the provisions to be procedurally unconscionable: (1) the arbitration clauses are contracts of adhesion; (2) she had no opportunity to negotiate terms even if they could have been negotiated; (3) she did not understand what an arbitration clause was, and the meaning of such a clause was not explained to her; (4) the arbitration clauses were buried in the Agreements; and (5) she had no opportunity to opt-out. Doc. 15 at 5.

A contract of adhesion is "a standardized contract form offered to consumers . . . on essentially [a] 'take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 285 (Fla. 1st DCA 2003) (quoting *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999)). "[T]he fact that a contract is one of adhesion is a strong indicator that the contract is procedurally unconscionable because it suggests an absence of 'meaningful choice.' " *Id.* Nevertheless, a finding of procedural unconscionability is not mandated by the presence of an adhesion contract standing alone. *Howse*, 221 F. Supp. 3d at 1344 (citing *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 40 (Fla. 4th DCA 2005)).

The circumstances here do not demonstrate procedural unconscionability. Nothing indicates that Tolliver was required to execute the Agreement the day that she joined Youfit. Thus, although the process was not protracted, nothing suggests that Youfit pressured her or rushed her in entering into the Agreement. Although the arbitration clauses are in small print, the print is not any smaller than other provisions under "Additional Terms" portion of the Agreements. Doc. 11-1 at 3; 11-2 at 3. Although Youfit did not explain the arbitration provisions, it did not confuse her as to what they meant, or refuse to answer questions regarding the provisions. Moreover, above

the signature lines, the Agreements contain acknowledgements that Tolliver received complete copies of the Agreements, and read and understood the Agreements. Doc. 11-1 at 2; Doc. 11-2 at 2.

"In Florida, a party to a contract is not 'permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it or because in retrospect, the bargain turns out to be disadvantageous.' " *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006) (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 288 (Fla. 1st DCA 2003)). Thus, courts have previously rejected arguments of procedural unconscionability on similar facts and this Court does the same. *Maldonado v. Mattress Firm, Inc.*, No. 8:13-cv-292-T-33AEP, 2013 WL 1760272, at *4 (M.D. Fla. Apr. 24, 2013); *Fla. Holdings III, LLC v. Duerst ex rel. Duerst*, 198 So. 3d 834, 839-40 (Fla. 2d DCA 2016).

### 2. Substantive Unconscionability

Tolliver argues that the arbitration provisions are substantively unconscionable because they shorten the limitations period for her TCPA claim, and contain a fee-shifting provision that would render her responsible for Youfit's attorneys' fees should it be the prevailing party, contrary to the FCCPA. Doc. 15 at 7-8.

Where a contract contains a severability clause and is otherwise subject to arbitration, as is the case here, the enforceability or validity of certain clauses, such as limitations or fee provisions, may be determined by the arbitrator. For example, in *ManorCare Health Services, Inc. v. Stiehl*, 22 So. 3d 96 (Fla. 2d DCA 2009), the parties entered into an arbitration agreement that limited the non-economic damages that could be awarded, eliminated punitive damages, and limited both parties' rights to recover attorneys' fees. *Id.* at 98. However, such remedial limitations had been

found to invalidate arbitration agreements. *Id.* at 99. Nonetheless, courts had also "treated the validity of such remedial limitations to be beyond the initial gateway determination of an arbitration agreement's enforceability where the limitations [were] severable from the agreement to arbitrate." *Id.* Moreover, in such cases, the remedial limitations' enforceability was to be considered by the arbitrator. *Id.* at 100. Although the contract contained a non-severability provision, the district court recognized that under Florida law and the intent of the contract, it was possible for an invalid provision to be severed. *Id.* Thus, the district court held that the trial court erred in denying the motion to compel arbitration. *Id.*

Similarly, in *Anders v. Hometown Mortgage Services, Inc.*, 346 F.3d 1024, 1026-27 (11th Cir. 2003), the plaintiff entered into a mortgage contract that contained an arbitration provision that imposed remedial limitations. The plaintiff later filed an action against the lender alleging statutory violations, and arguing that the remedial limitations in the arbitration agreement rendered in unenforceable. *Id.* at 1029. The Eleventh Circuit recognized that prior case law held that an arbitration clause was invalid where arbitration would deny a party the possibility of meaningful relief, but held that such law was distinguishable because it did not involve a severability provision. *Id.* at 1032. The contract in the case before it, on the other hand, included a severability provision, and the Court concluded that "[b]ecause any invalid provisions are severable, the underlying claims are to be arbitrated regardless of the validity of the remedial restrictions." *Id.* The Court explained that "[w]hether the agreement is valid as written or suffers invalid provisions that must be removed under the forgiving eye of the severance clause, there is a valid agreement to arbitrate in place." *Id.* Moreover, because a valid agreement to arbitrate existed, whether the remedial limitations should be severed was a decision for the arbitrator to make. *Id.* at 1032-33.

Here, the Agreements contain severability provisions. Doc. 11-1 at 3; Doc. 11-2 at 3. Because of this, even if certain clauses are deemed unenforceable, a valid agreement to arbitrate remains. *Anders*, 346 F.3d at 1032-33. Thus, whether the limitations clause and fee-shifting provision are enforceable is a matter for the arbitrator to decide. *Id.*

### C. Dismiss or Stay

Youfit requests that should this Court compel arbitration, it either dismiss or stay this action. Pursuant to § 3 of the FAA,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The Eleventh Circuit has previously indicated that a stay, rather than dismissal, is preferred where a stay is requested. *Spinner v. Credit One Bank, N.A.*, No. 6:17-cv-340-Orl-37TBS, 2017 WL 6731967, at *1 n.1 (M.D. Fla. Dec. 29, 2017) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992)); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC, USW Local 200 v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015) (stating that a stay is proper where section 3 of the FAA is applicable and requested). Other decisions in this district reach a similar conclusion. *Fraser v. Perkins & Marie Callender's LLC*, No. 8:16-cv-3226-T-23AEP, 2016 WL 7492464, at *1 (M.D. Fla. Dec. 30, 2016) (stating that the Court could not dismiss the action upon compelling arbitration, but was required by section 3 to stay the action); *In re Wiand*, No. 8:10-CV-71-T-17MAP, 2011 WL 4530203, at *14-15 (M.D. Fla. Sept. 29, 2011). The Court will stay this proceeding pending the arbitration of Plaintiff's claims.

Accordingly, it is hereby **ORDERED that:**

1. Defendant's Motion to Compel Arbitration and to Dismiss or Stay for Lack of Subject Matter Jurisdiction and Incorporated Memorandum of Law (Doc. 10) is **GRANTED**.

2. Plaintiff is compelled to arbitrate her claims against Defendant as asserted herein.

3. This action is **STAYED** pending the completion of arbitration. The parties shall file a notice informing the Court that the arbitration has been concluded, or that their dispute has otherwise been resolved, within **FOURTEEN (14) DAYS** of either of such event and immediately dismiss this case, if appropriate.

4. The Clerk is directed to terminate all pending motions and deadlines and administratively close this case.

**DONE** and **ORDERED** in Orlando, Florida on June 25, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties